NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

ROBERT STERLING DORSEY,        :    CIV. NO. 20-3535 (RMB)
                               :
            Petitioner         :
                               :
      v.                       :        **OPINION**
                               :
DAVID ORTIZ,                   :
                               :
            Respondent         :


This matter comes before the Court upon Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2241 (Pet., Dkt. No. 1), challenging his prison disciplinary hearing in the Federal Bureau of Prisons ("BOP") and his loss of good conduct time as a sanction. Petitioner's motion for discovery (Mot. for Discovery, Dkt. No. 5); and motion for default judgment (Mot. for Default J., Dkt. No. 9) are also before the Court. For the reasons discussed below, the Court will deny Petitioner's motions for discovery and default judgment and deny his petition for writ of habeas corpus.

I.   PROCEDURAL HISTORY

Petitioner filed a habeas petition under 28 U.S.C. § 2241 on April 1, 2020. (Pet., Dkt. No. 1.) On April 13, 2020, the Court issued an Order directing Respondent to file an answer to the petition within 45 days. (Order, Dkt. No. 2.) Respondent timely filed an answer to the petition on May 28, 2020. (Answer, Dkt. No.

4.) A Certificate of Service was filed with the answer, stating that Respondent served a copy of the answer on Petitioner by mail on May 29, 2020. (Cert. of Service, Dkt. No. 4-2.) Based on Plaintiff's motion for discovery, filed on August 5, 2020, and a letter from Plaintiff received on August 13, 2020 (Letter, Dkt. No. 6), the Court believed that Petitioner had not received a copy of the answer with supporting documents and ordered Respondent to serve another copy of the answer on Petitioner, and to file a response to his discovery motion. (Order, Dkt. No. 7.) However, Petitioner had received Respondent's answer, and Petitioner's August 13 letter included a document labeled "28 U.S.C. § 2241," which is Petitioner's reply brief. (Reply Brief, Dkt. No. 6.)

On December 2, 2020, Respondent filed a brief in opposition to Petitioner's discovery motion, and stated that a second copy of the answer was also sent to Petitioner. (Respt's Opp. Brief, Dkt. No. 8.) Petitioner then filed a motion for default judgment. (Mot. for Default J., Dkt. No. 9.) Petitioner asserts that he never received a copy of Respondent's brief in opposition to discovery, although he had initially received Respondent's answer. (Letter, Dkt. No. 11 at 1-2.) Respondent then filed a brief in opposition to default judgment (Respt's Default J. Opp. Brief, Dkt. No. 10) and Petitioner filed a reply brief concerning default judgment. (Default J. Reply Brief, Dkt. No. 11.)

II.  MOTION FOR DISCOVERY

In his motion for discovery, Petitioner requests the following:

- Request #1) Video footage dated 8-19-2019 between the times of 2:20 and 4:00 p.m. from the Secure Female Facility (SFF) SFF Hazelton at the Library/Education Facility.

- Request #2) Statement from J. Torralba dated 8/19/2019, in which he stated in front of the barbershop "You're not the inmate I was looking for."

- Request #3) Incident Report #3293732, which staff member amended the report and crossed off SFF and replaced it with F.C.C. When was the report handed to Inmate Dorsey?

- Request #4) Copy of Lab Report as it pertains to Incident Report #3293732. Inmate requests time, place and results of cellular phone, after it was sent to the lab for forensics to determine ownership.

(Mot. for Discovery, Dkt. No. 5 at 1-2.) Respondent's Answer and supporting documents demonstrate that discovery of the materials requested by Plaintiff could not change the result of this proceeding. See Chambers v. Sec'y Pennsylvania Dep't of Corr., 442 F. App'x 650, 656 (3d Cir. 2011) (affirming habeas court's denial of discovery request where forensics would not demonstrate that the petitioner was entitled to relief). Therefore, the Court will not consider Respondent's brief in opposition to the motion for discovery because Petitioner never received a copy of it, and will

instead refer only to the arguments provided in Respondent's answer. The Court denies Petitioner's discovery request for lack of good cause shown, as discussed in the merits of the petition below.

III. MOTION FOR DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55(a) provides:

> Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

The Clerk of Court must enter *default* before a party may seek default judgment by motion to the Court. Fed. R. Civ. P. 55(b)(1) (emphasis added). The Clerk did not enter default because Respondent timely filed an answer to the petition. Further, Respondent timely complied with the Court's order to serve on Petitioner a second copy of the answer and a response to Petitioner's motion for discovery. No answer to Petitioner's reply brief (Dkt. No. 6) was required or even permitted. See Local Civil Rule 7.1(d)(6) ("No sur-replies are permitted without permission of the Judge or Magistrate Judge to whom the case is assigned.") Although Petitioner did not receive the second copy of Respondent's answer, after he had already received the first copy, and he did not receive the opposition brief to his discovery motion, which the Court will not consider because the answer demonstrates there

4

is no good cause for discovery, Petitioner is not entitled to default judgment.[1] Moreover, the Court has received and accepted as timely Petitioner's reply brief, where he responded to the arguments in Respondent's answer. Therefore, the petition is ready for determination on the merits, and there is no basis for default judgment.

IV.  MERITS OF THE PETITION

    A.  The Disciplinary Proceedings

    Petitioner, now incarcerated at the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"), was designated to the Federal Correctional Complex ("FCC") Hazelton in West Virginia at the time of the incident in question. (Declaration of Christina Clark[2] ("Clark Decl."), Ex. 4, Dkt. No. 4-1 at 20; Ex. 8, Dkt. No. 4-1 at 32.) On August 19, 2019, Petitioner was charged with violation of Code 108 for Possession of a Hazardous Tool, a cellphone. (Id., Ex. 5 at ¶¶ 9-10, Dkt. No. 4-1 at 25.)

---

[1] Petitioner also sought default judgment because the motion day for his discovery motion was September 8, 2020, and he did not receive anything from Respondent concerning that date. (Mot. for Default J., Dkt. No. 9 at 2.) The motion dates set by the Court serve only to establish the deadlines for briefing and oral argument, when oral argument is permitted, and do not implicate the default judgment rule, which governs responses to pleadings, not motions. See Local Civil Rules 7.1(c), (d) (governing motion days and briefing.)

[2] Christina Clark is a Senior Attorney Advisor with the BOP, FCI-Fort Dix, and has access to BOP files maintained in the ordinary course of business. (Clark Decl. ¶1.)

See also 28 C.F.R. § 541.3 (BOP Prohibited Acts and available sanctions). A BOP staff member, J. Torralba, completed Incident Report No. 3293732, which triggered the disciplinary proceedings. (Clark Decl., Ex. 5 at ¶12, Dkt. No. 4-1 at 25.) The institution name on the incident report is SFF Hazelton, but "SFF" was crossed out and replaced with "FCC." (Id. ¶ 1.) The incident report contains the following description of the events leading to the Code 108 charge against Petitioner:

> On the above date and time, I did a random pat search of I/M Dorsey, #43739-083 by the library area of the Camp programs building. Upon pat searching the above inmate, I discovered a small black pouch that contained a cell phone and black wired headphones. Inmate Dorsey ran from me before I can ask him further questions. I called Camp Officer T. Becker to help me locate him inside the housing unit. We did not locate him on our initial search. Officer Becker and I then went through bed book card locator. I identified Inmate Dorsey from the photo. Officer Decker used the intercom system to have Dorsey come to the officer's station. At this time Inmate Dorsey changed his appearance by changing into grey sweat pants and a long sleeve grey shirt sweat shirt. He also now wore glasses. Prior to this, Inmate Dorsey wore green pants and a short sleeve shirt. We located I/M Dorsey on his bunk area. I was then able to positively identified [sic] him. Officer Becker took the inmate away from the housing area and I started to pack his personal items with the assistance of Case manager Dugan. Lastly, I told SIS officers Marshall and Osborne about what transpired in finding the cell phone on the above inmate as well as make a positive identification.

(Clark Decl., Ex. 5 at ¶ 11, Dkt. No. 4-1 at 25.) According to the incident report, these events occurred on August 19, 2019 at 2:20 p.m., and the incident report was completed later that day at 3:55 p.m. (Clark Decl., Ex. 5, ¶¶ 5, 13, Dkt. No. 4-1 at 25.) The cellphone was logged into evidence and a chain of custody record was completed. (Id., Ex. 8 at § IIID, Dkt. No. 4-1 at 33.)

The BOP conducted an investigation of the incident on August 20, 2019. (Id., Ex. 5 at ¶¶ 23-27, Dkt. No. 4-1 at 25-26.) Petitioner was given a copy of the incident report and had the opportunity to make a statement and request witnesses. (Id. ¶¶ 14-16, 24.) Petitioner did not request witnesses and "did not request that the CCTV footage be reviewed." (Id. ¶ 25, Dkt. No. 4-1 at 26.) The investigator approved the charges for further proceedings. (Clark Decl., Ex. 5 at ¶ 26, Dkt. No. 4-1 at 26.)

On August 22, 2019, a hearing was held before a Unit Discipline Committee ("UDC") and Petitioner provided the statement "wasn't me." (Id., Ex. 5 at ¶¶ 17-21.) See 28 C.F.R. § 541.7 (describing UDC review of the incident report). The UDC referred the matter to a Discipline Hearing Officer ("DHO") for greater sanctions than it had authority to issue. (Clark Decl., Ex. 5 at ¶¶ 18-19., Dkt. No. 4-1 at 25.) In advance of the DHO hearing, Petitioner received a statement of his rights (Id., Ex. 6, Dkt. No. 4-1 at 28), notice of the pending hearing, and Petitioner declined a staff representative and requested one witness. (Id.,

Ex. 7, Dkt. No. 4-1 at 30.) Petitioner's witness, Inmate Little,
provided the following written statement:

> The CO and Toraba [sic] came to the unit
> looking for someone. I had know [sic] Idea
> what was going on. I guess they didn't find
> who they were looking for. Then over the
> loudspeaker, they called inmate Dorsey to the
> front. He went to the front and Mr. Toraba
> [sic] looked at him and said that he was not
> the person he was looking for. Then they had
> a recall. When they came to the unit Mr. Toraba
> [sic] then picked out inmate Dorsey and took
> him up front.

(Clark Decl., Ex. 8 at § III(C)(3), Dkt. No. 4-1 at 32.)

The DHO hearing was held on August 29, 2019. (Id., Ex. 8 at
§ I(B), Dkt. No. 4-1 at 32.) The DHO notified Petitioner of his
rights and Petitioner waived his right to a staff representative.
(Id. §§ I, II(A.) The DHO considered the Incident Report and the
investigation notes. (Id. § III(D), Dkt. No. 4-1 at 33.) Petitioner
was given an opportunity to testify, and the DHO entered the
witness statement, a photograph of the cellphone, and chain of
custody record into evidence. (Id. § III, Dkt. No. 4-1 at 32-33.)
Petitioner stated, "It was not me. He called me up there and told
me to go back. I was not who he was looking for." (Id. § III(B)).

The DHO concluded that Petitioner was guilty of a Code 108
violation at FCC Hazelton. (Id. §§ IV, V, Dkt. No. 4-1 at 33.) The
DHO credited the reporting officer's description of the incident
(Id. § V), and found Petitioner's denial and the statement of

Witness Little to be less credible. (Id.) The DHO explained his/her

reasoning:

> This decision was based upon the fact that you
> were positively identified upon review of the
> bed book card locator and discovered in your
> possession during a pat search was a cellular
> phone, prior to you fleeing the area.
>
> Your contention that you were not who he was
> looking for was considered but insufficient to
> excuse you from the offense. Mr Torrabla
> [sic], was specific in the written report that
> you were identified as the subject he
> recovered the cellular phone from prior to
> fleeing the area, with the use of the bed book
> card locater. The DHO found it was not
> unreasonable to believe you were able to
> disguise your initial appearance with a change
> of clothes and the addition of facial
> ornaments you. However, after closer
> consideration it was recognized that you were
> attempting to alter your original appearance
> in hopes of avoiding detected [sic].
>
> The DHO considered the information provided in
> your witness's written statement, however the
> greater weight of evidence remained with the
> reporting officer['s] written account and
> identification, whereas your witness may be
> less than truthful to assist you in avoiding
> the consequences of your misconduct.

(Clark Decl., Ex. 8 at § V, Dkt. No. 4-1 at 33-34.) The DHO also

noted that BOP Program statement 5270.09 requires inmates to bear

sole responsibility to keep themselves free of contraband,

regardless of ownership. (Id.)

The DHO imposed sanctions including disallowance of 41 days

of earned GCT and forfeiture of 41 days of non-vested GCT, because

possession of a cellphone "interferes with the ability of staff to

9

monitor whether inmates are making calls for prohibited or illegal purposes." (Id. §§ VI, VII, Dkt. No. 4-1 at 34.) The 41-day loss of earned GCT was the minimum sanction for "greatest severity level offenses[.]" 28 C.F.R. § 541.4(b)(1); 28 C.F.R. § 541.3, Table 1. Petitioner was also sanctioned with 30 days of disciplinary segregation and a 180-day loss of commissary, telephone, and e-mail privileges for the Code 108 infraction. (Clark Decl., Ex. 8 at § VI, Dkt. No. 4-1 at 34.) On October 28, 2019, Petitioner appealed the DHO's decision to the BOP Northeast Regional Office and the BOP Central Office, both of which affirmed the DHO, the latter stating "you were appropriately charged with possession of a cellular phone; it is irrelevant if you actually used it." (Clark Decl., Exs. 2, 3, Dkt. No. 4-1 at 12-18.)

B.   The Parties' Arguments

Petitioner seeks relief from the disciplinary sanctions on five grounds: (1) Petitioner was never at SFF, a facility for females; (2) BOP staff member Mr. Torralba misidentified Petitioner; (3) an SIS investigator told Petitioner that lab results would show whether the phone belonged to Petitioner, and Petitioner never received the lab results; (4) Torralba never charged Petitioner with running, eluding or refusing a direct order, which suggests Torralba's report was false; and (5) the sanctions were too harsh. (Pet. ¶¶ 13, 15, Dkt. No. 1 at 6-7.) Respondent contends the petition should be denied for two reasons,

Petitioner was afforded his due process rights throughout the disciplinary process, and the DHO's finding of guilt was supported by "some evidence," the applicable standard. (Answer, Dkt. No. 4 at 3.)

    C.   Standard of Law

In Wolff v. McDonnell, the Supreme Court described the minimum due process required before an inmate may lose good-time credits. 418 U.S. 539, 563-71 (1974). The due process protections include (1) written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in defense; (3) opportunity to receive assistance from an inmate representative; (4) a written statement of the evidence relied on and reasons for the disciplinary action; and (5) an appearance before an impartial decision-making body. Wolff, 418 U.S. at 563-567. The Supreme Court later held that "some evidence" is the standard of review required to affirm an inmate's finding of guilt of a prison rule infraction that resulted in the loss of good time credit. Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id. The standard is met if any evidence in the record could support the conclusion by the tribunal. Id. at 455-56.

The BOP regulations for prison disciplinary proceedings exceed the minimum due process provided in Wolff. See 28 C.F.R. §§ 541.1 to 541.8; see Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994) ("While the regulations substantially track the procedures outlined in Wolff, in some respects they go beyond what the due process clause itself requires.") (internal citations omitted). Under 28 C.F.R. § 541.5, when BOP staff have reason to believe that an inmate committed a prohibited act, the BOP must prepare an incident report and refer the matter for investigation. After an investigation, the incident report is provided to a UDC pursuant to 28 C.F.R. § 541.7, for an initial hearing. A DHO hearing must be conducted pursuant to the procedures set forth at 28 C.F.R. § 541.8. The procedures require the BOP to give inmates advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. § 541.8(c). Inmates are entitled to the assistance of a staff representative for the DHO hearing. 28 C.F.R. § 541.8(d). The inmate has the right to be present throughout the DHO hearing, except during deliberation or when institutional security would be jeopardized. 28 C.F.R. § 541.8(e).

In a DHO hearing, the inmate is entitled to make a statement, present documentary evidence, and submit names of requested witnesses and have them called to testify, if reasonably available, and present documents. 28 C.F.R. § 541.8(f). Once a decision has been made by the DHO, the DHO must prepare a record of the

12

proceedings sufficient to document that the inmate was advised of his rights, the DHO's findings, the specific evidence relied upon by the DHO, the sanctions imposed, the reasons for the DHO's decision and for the sanctions imposed, and the record must be delivered to the inmate. 28 C.F.R. § 541.8(h).

    D.   <u>Analysis</u>

        1.   *The SFF designation on the incident report*

In Ground One of the petition, Petitioner asserts he was charged in the incident report with having been found in the female institution, SFF at Hazelton, and the DHO confirmed that he found Petitioner guilty of all facts alleged in the incident report. (Pet. ¶13, Ground One, Dkt. No. 1 at 6.) Petitioner claims he was never in SFF. (<u>Id.</u>) Respondent opposes habeas relief on Ground One, arguing that "SFF," which was crossed out by hand on the incident report, was simply a clerical error, and Petitioner was not charged with unauthorized access to SFF. (Answer, Dkt. No. 4 at 12.) In his motion for discovery, Petitioner sought the name of the staff member who crossed out "SFF" and wrote in "FCC" and the time when was the report given to Petitioner. (Mot. for Discovery, Dkt. No. 5.) He also requested video footage from SFF to show he was never there. (<u>Id.</u>) In his reply brief, Petitioner asserts that it was the DHO, on August 29, the day of the hearing, who said "SFF" was a typographical error and crossed it out when Petitioner

13

questioned the form. (Reply Brief, Dkt. No. 6 at 9-10.) Petitioner argues that this shows bias on part of the DHO. (Id.)

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). Rule 6(a) of the Rules Governing Section 2254 Cases in United States District Courts, which applies to petitions under 28 U.S.C. § 2241 pursuant to Rule 1(b), provides that, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Habeas Rule 6(b) requires the party requesting discovery to provide reasons for the request. Under the "good cause" standard, courts should grant leave to conduct discovery in habeas proceedings only "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that he is ... entitled to relief.'" Thompson v. Lappin, No. CIV. 07-2694 (JAP), 2008 WL 2559303, at *2 (D.N.J. June 24, 2008) (quoting Bracy, 520 U.S. at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)).

In his petition, Petitioner asserts he was never in the female facility, SFF, but he was found guilty of being there. In his reply brief, he claims the DHO was biased because, on the day of the hearing, the DHO said SFF was a typographical error, crossed it out and wrote in "FCC" as the name of the institution, and also

changed the Unit number on the incident report. First, it is clear
from the incident report that Petitioner was not charged with
anything other than possession of a cellphone, Prohibited Act Code
108. (Clark Decl., Ex. 5 ¶¶9-10, Dkt. No. 4-1 at 25.) Second, the
place of the incident is described on the report as "Camp/SPC
Programs Building," consistent with the description of the
incident by Torralba, the reporting staff member. The incident
report left no question of where the alleged incident occurred and
there is no reason to conclude the DHO was biased by correcting
the name of the institution and the unit, which had nothing to do
with the charge other than the institution where the charge was
brought. Therefore, Petitioner did not show good cause for
discovery concerning the handwritten corrections on the incident
report. See Levi v. Holt, 192 F. App'x 158, 162 (3d Cir. 2006)
(habeas discovery requests are granted upon discretion of the
district court.) Further, Ground One of the petition is meritless
because the clerical error was not relevant to the charge and the
DHO's correction of a clerical error does not indicate bias. See
e.g. Millhouse v. Warden Lewisburg USP, 785 F. App'x 931, 935 (3d
Cir. 2019) ("we discern no clear error in the District Court's
finding that the reference in the report's narrative description
was a typographical error.")

2.   *Torralba's Identification of Petitioner*

In Ground Two of the petition, Petitioner attacks Torralba's identification of Petitioner as the inmate who possessed a cellphone. Petitioner relies on Inmate Little's testimony that when Torralba called Petitioner to the message center, Inmate Little heard Torralba say that Petitioner was not the inmate he was looking for. (Pet. ¶13, Ground Two, Dkt. No. 1 at 6.) Torralba confronted two other inmates before coming back to Petitioner and identifying him as the inmate who had a cellphone. (Id.) In his discovery request, Petitioner's sought a statement from Torralba that Petitioner was not the inmate he was looking for. (Mot. For Discovery, Dkt. No. 5.) In his reply brief, Petitioner argues the DHO did not consider Inmate Little's statement, and Torralba could not have been 100% sure of his identification, as he claimed, because he did not immediately take Petitioner into custody and instead considered whether it was another inmate. (Reply Brief, Dkt. No. 6 at 10, 11, 13.)

Petitioner's allegation that the DHO did not consider Inmate Little's statement is belied by the DHO's report, and the report further demonstrates that the DHO took into account the fact that Torralba did not immediately identify Petitioner. (Clark Decl., Ex. 8 § V, Dkt. No. 4-1 at 33-34.) The DHO discounted Petitioner's testimony and Inmate Little's written statement because Torralba explained Petitioner had changed his appearance by changing his

16

clothes and wearing glasses. (Id.) The DHO credited Torralba's identification because Torralba first identified Petitioner from the bed book card locator, and after seeing several other inmates, was able to identify Petitioner in person, despite his change in clothes and addition of eyeglasses. (Clark Decl., Ex. 8 § V, Dkt. No. 4-1 at 33-34.))

The district court reviews only whether some evidence supports the DHO's findings, without independent assessment of the credibility of witnesses, or weighing the evidence. Kenney v. Lewisburg, 640 F. App'x 136, 139 (3d Cir. 2016) ("[a]scertaining whether the 'some evidence' standard is satisfied does not require examination of the entire record, independent assessment of witnesses' credibility, or weighing of the evidence") (quoting Hill, 472 U.S. at 455-56.) Torralba's statement in the incident report and the photograph of the cellphone found by Torralba are sufficient to meet the "some evidence" standard. Therefore, the Court denies Ground Two of the petition.

3.  *Forensic evidence of cellphone ownership*

In Ground Three of the petition, Petitioner asserts that when he denied possession of the cellphone to an SIS investigator, he was told SIS would send the cellphone to a lab to confirm ownership. (Pet. ¶ 13, Dkt. No. 1 at 6.) Petitioner sought the lab results in his discovery request. (Mot. for Discovery, Dkt. No. 5.) In the answer, Respondent refers to the BOP Central Office's

17

response to Petitioner's administrative appeal, explaining that the contents of the cellphone would not change the result that Petitioner had possessed the cellphone. (Answer, Dkt. No. 4 at 13, citing Clark Decl., Ex. 3.)

BOP Prohibited Act 108 precludes possession of a hazardous tool, including a cellphone. 28 C.F.R. § 541.3 Table 1. The regulation does not require ownership or even use of a cellphone for violation of the Code. See also BOP P.S. 5270.09, Table 1.[3] Therefore, Petitioner has not shown good cause for discovery of the lab results. Ground Three of the petition is denied because there is sufficient evidence to establish Petitioner possessed the cellphone, and even if forensics showed Petitioner did not own or even use the cellphone, it would not exonerate him. See e.g. Denny v. Schultz, 708 F.3d 140, 147 (3d Cir. 2013) ("it is undisputed that two homemade shanks were found in a space accessible from within Denny's cell. This evidence, by itself, constitutes "some evidence" that Denny possessed the weapons in question.") Therefore, the Court denies Ground Three of the petition.

    4. *Torralba's failure to charge Petitioner with running or eluding*

In Ground Four of the petition, Petitioner asserts that if Torralba's description of the incident was accurate, that

---

[3] Available at https://www.bop.gov/mobile/policy/, last visited March 24, 2021.

Petitioner ran off after Torralba discovered the cellphone on him, then Torralba would have charged Petitioner with running or eluding staff. (Pet. ¶ 13, Dkt. No. 1 at 7.) Respondent claims the lack of another charge is not relevant; the evidence was sufficient to find Petitioner guilty of possessing a cellphone. (Answer, Dkt. No. 4 at 12, 14-16.)

The BOP's decision not to charge Petitioner with running from or eluding staff is not exculpatory of his possession of a cellphone. Once again, because there is some evidence supporting the DHO's finding of guilt on the infraction that was charged, it is not the Court's role to reweigh the evidence or assess credibility. Therefore, the Court denies Ground Four of the petition.

5.   *The photograph of the cellphone*

Although not raised in the petition, Petitioner asserts in his reply brief that the photograph of the cellphone that was put into evidence "has USP Hazelton and not FCC" on the heading of the page, and this raises doubt about the fairness of the hearing. (Reply Brief, Dkt. No. 6 at 13.) District courts need not entertain claims raised for the first time in a reply brief because it deprives the respondent of an opportunity to address the claim. See U.S. v. Boggi, 74 F.3d 470, 478 (3d Cir. 1996) ("As a general matter, the courts of appeals will not consider arguments raised on appeal for the first time in a reply brief.") (quoting Hoxworth

19

v. Blinder, Robinson & Co., 903 F.2d 186, 204-05 n. 29 (3d Cir. 1990)). Therefore, the Court simply notes that the heading "United States Penitentiary Hazelton Photo Sheet" above the photograph of the cellphone does not cause doubt over the fairness of the disciplinary proceeding. According to the BOP website,[4] FCI Hazelton, a medium security institution with a secure female facility, and USP Hazelton, a high security penitentiary with an adjacent minimum security camp, fall within the Hazelton Federal Correctional Complex ("FCC"). The incident report states that Torralba found Petitioner in possession of a cellphone at "Camp/SPC Programs Building." (Clark Decl., Ex. 5 ¶ 6, Dkt. No. 4-1 at 25.) The evidence supports a conclusion that the cellphone was stored, or the photograph was taken, in any of the facilities under the umbrella of FCC Hazelton, rather than, as Petitioner seems to suggest, that the heading on the photograph demonstrates the cellphone was not found on him in or around the Programs Building in the Camp.

6.    *Harshness of the sanctions*

Petitioner argues that his sanctions, including a total loss of 82 GCT days, are too harsh. (Pet. ¶ 15.) The sanctions imposed

---

[4]  The Court takes judicial notice under Federal Rule of Evidence 201(b) of the description of the Federal Correctional Complex Hazelton ("FCC Hazelton") on the BOP website, available at https://www.bop.gov/locations/institutions/haz/, last visited March 24, 2021.

by the DHO were within the limits for a "greatest severity level prohibited act," according 28 C.F.R. § 541.3(b) and Table I. Even when the sanctions imposed exceed the "ordinary sanction," it does not violate due process when the sanctions fall within the sanctions in the applicable regulation. See e.g., Wallace v. Ebbert, 505 F. App'x 124, 125 (3d Cir. 2012) ("nothing in Table 1 prohibited the DHO from disallowing a greater percentage of [the inmate's] good conduct time in an effort to deter him from future infractions.") Therefore, Petitioner was not denied due process due to the harshness of the sanctions imposed, and the Court denies Ground Five of the petition.

V.    CONCLUSION

For the reasons discussed above, the Court denies Petitioner's motions for discovery and default judgment and denies the petition for writ of habeas corpus under 28 U.S.C. § 1915.


An appropriate Order follows.


Date: **March 29, 2021**

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**